PAUL J. FISHMAN
United States Attorney
KRISTIN L. VASSALLO
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel. (973) 645-2835
e-mail: kristin.vassallo@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| SEAN KIELTY, | HON. PETER G. SHERIDAN |
|---|---|
| *Plaintiff,* | *Civil Action No.* 14-CV-3269 (PGS)(LHG) |
| v. | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, | |
| *Defendant.* | |

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A PROTECTIVE ORDER

PAUL J. FISHMAN
UNITED STATES ATTORNEY
Attorney for Defendant

KRISTIN L. VASSALLO
Assistant United States Attorney

**TABLE OF CONTENTS**

Preliminary Statement ...........................................................................................................................1

Statement of Facts .................................................................................................................................2

Argument –

      The Court Should Issue an Order Requiring Plaintiff to Destroy or Return
      All Hard and Electronic Copies of the Inadvertently Released Information
      and Prohibiting Him From Distributing Or Using That Information ...................................7

Conclusion ..........................................................................................................................................14

# TABLE OF AUTHORITIES

**Cases:**

Al-Haramain Islamic Found., Inc. v. Bush,
   451 F. Supp. 2d 1215, 1228-29 (D. Or. 2006),
   rev'd in part on other grounds, 507 F.3d 1190 (9th Cir. 2007) .................................................. 10

American Civil Liberties Union v. Dep't of Defense, No. 09 Civ. 8071 (S.D.N.Y.) ........................... 9, 10, 11

Bayliss v. New Jersey State Police, No. 11-890, 2014 4657304 (D.N.J. 2014) ............................ 8

Cabotage v. Ohio Hosp. for Psychiatry, LLC,
   No. 2:11-cv-50, 2012 WL 3064116 (S.D. Ohio Jul. 2012) ....................................................... 10

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ................................................................... 8

Degen v. United States, 517 U.S. 820 (1996) ................................................................... 8

Eaglesmith v. Ray, No. 2:11-cv-0098-JAM-JFM, 2012 WL 1554922 (E.D. Cal. 2012) ............... 9

Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319 (S.D.N.Y.1997) ........................................... 8

Flores v. Albertson's, Inc., No. CV 01-0515 PA, 2004 WL 3639290 (C.D. Cal. 2004) ................ 8

Hersh & Hersh v. U.S. Dep't of Health & Human Servs., No. C 06-4234 PJH,
   2008 WL 901539 (N.D. Cal. 2008) ..................................................................................... 9, 11

In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,
   278 F.3d 175 (3d Cir. 2002) ................................................................................................ 8

In re Zyprexa Injunction, 474 F. Supp. 2d 385 (E.D.N.Y. 2007) ................................................. 10

Link v. Wabash R.R. Co., 370 U.S. 626 (1962) .................................................................... 7

Piper v. U.S. Dep't of Justice, 294 F. Supp. 2d 16 (D.D.C. 2003),
   aff'd on other grounds, 222 F. Appx. 1 (D.C. Cir. 2007) ........................................................ 9

Public Citizen Health Research Group v. FDA, 953 F. Supp. 400 (D.D.C. 1996) ......................... 9

Pure Power Boot Camp v. Warrior Fitness Boot Camp,
   587 F. Supp. 2d 548 (S.D.N.Y. 2008) ................................................................................ 8, 9

Rhoads Industries, Inc. v. Building Materials Corp. of America,
   254 F.R.D. 216 (E.D. Pa. 2008) .......................................................................................... 8

United States v. Comco Mgmt. Corp., No. SACV 08-0668-JVS,
  2009 WL 4609595 (C.D. Cal. 2009) .......................................................................... 9

United States v. Hudson, 11 U.S. (7 Cranch) 32 (1812) ................................................. 7

United States v. Johns-Manville Corp., 213 F. Supp. 65 (E.D. Pa. 1962) ...................... 8

United States v. Moussaoui, 483 F.3d 220 (4th Cir. 2007) ............................................ 7

United States v. Story County, Iowa, _ F. Supp. 2d _, 2014 WL 2986460 (S.D. Iowa 2014) ...... 10

United States v. Visa U.S.A., Inc., No. 98 Civ. 7076,
  2000 WL 1682753 (S.D.N.Y. 2000) ....................................................................... 10

**Statutes:**

5 U.S.C. § 552(b)(2)(B)(6) ............................................................................................ 13
5 U.S.C. § 552(b)(5) ................................................................................................... 1, 3
5 U.S.C. § 552(b)(6) ...................................................................................................... 3
5 U.S.C. § 552(b)(2) ................................................................................................... 1, 3

**Rules:**

Fed. R. Civ. P. 26(b)(5)(B) ............................................................................................ 8
Fed. R. Evid. 502(b) ...................................................................................................... 8

**PRELIMINARY STATEMENT**

Defendant the Federal Emergency Management Agency ("FEMA"), by its attorney, Paul J. Fishman, United States Attorney for the District of New Jersey, respectfully submits this memorandum of law in support of its motion for a protective order compelling plaintiff Sean Kielty to take certain steps regarding Privacy Act-protected information that was inadvertently disclosed to him during the processing of his Freedom of Information Act ("FOIA") requests.

As part of its production of documents in response to plaintiff's FOIA requests, FEMA inadvertently provided unredacted documents containing information protected by the Privacy Act, as well as information that is exempt from disclosure under FOIA Exemptions 2 and 5, 5 U.S.C. §552(b)(2) and (b)(5). This information included highly sensitive personally identifying information ("Sensitive PII") like Social Security numbers, dates of birth, and home addresses of three FEMA employees, as well as identifying information about 164 FEMA and other individuals. After learning of the inadvertent release from one of those employees – who was apparently contacted by plaintiff – FEMA's Privacy Officer immediately began to investigate and respond to the incident. Within two working days, FEMA contacted plaintiff about the unauthorized disclosure and directed him to delete the information and confirm that he had not distributed it. Over the next week and a half, the agency took steps to arrange for credit monitoring and identity theft protection for the affected individuals and informed the individuals both of the inadvertent release and the efforts that would be taken to protect them.

Despite multiple attempts by FEMA and counsel to secure plaintiff's assistance in protecting this information, plaintiff has failed to cooperate with the agency, refusing to destroy or return information that he acknowledges he is not entitled to possess, or even to sign a declaration

1

affirming that he will not distribute or use that information. Plaintiff's refusal to cooperate with FEMA is preventing the agency from taking the necessary actions to protect against further distribution. Accordingly, to ensure that this information is not further copied or distributed, it has become necessary that the Court enter the proposed order directing plaintiff to delete or return all copies of the information and enjoining him from distributing or using the information in any way.[1]

## STATEMENT OF FACTS

On or about January 21, 2014 and February 22, 2014, plaintiff submitted FOIA requests to FEMA. See Declaration of Charlene Myrthil ("Myrthil Decl.") ¶ 2 n.1. In response to plaintiff's FOIA requests, FEMA's Records Management Division ("RMD") searched for responsive documents and uploaded those documents to a document management program. See id. ¶ 4. This program allows the agency to bracket information that is exempt from disclosure under FOIA for redaction. See id.

On May 16, 2014, before FEMA had produced any documents, plaintiff filed this action, and sought an order (a) compelling FEMA to provide all requested documents; (b) granting plaintiff "full access to all archival emails" for certain FEMA employees; and (c) directing Apple, Blackberry, and other technology companies to provide all texts or instant messages for

---

[1] FEMA's primary concern about the inadvertently released documents -- the PII and sensitive PII contained in those materials -- has led the agency to bring this motion before any scheduling order has been entered in the case. In addition to unredacted PII, however, the documents also contained unredacted information that is exempt from disclosure under FOIA pursuant to 5 U.S.C. § 552(b)(2) (personnel rules and practices) and (b)(5) (deliberative process) and other exemptions. Within the next days, plaintiff will be provided with a redacted version of the production that excludes all of the exempted material. Any dispute that he may have with FEMA's application of these other exemptions should be addressed in the normal course of litigation, during motions for summary judgment that address whatever issues plaintiff may have regarding the agency's search for and production of responsive documents.

2013 from devices assigned to certain FEMA employees.  See Complaint, filed May 16, 2014, at 6.

On June 11, 2014, RMD mailed a hard copy of its first interim release of responsive documents to plaintiff.  See Myrthil Decl. ¶ 5.  On June 17, 2014, a copy of this first set of documents was e-mailed to plaintiff's personal e-mail address.  See id.  On June 19, 2014, RMD, through agency counsel, informed plaintiff that it would produce interim releases every two weeks, beginning on July 7, 2014.  See id. ¶ 6.  From June 17, 2014, to October 2, 2014, RMD e-mailed the interim releases and the final release to plaintiff's personal e-mail address.  See id. ¶ 7.

On October 16, 2014, at 3:09 p.m., a FEMA employee informed the Director of RMD, Charlene Myrthil, that plaintiff had received a copy of the employee's DD 214[2] containing his unredacted personal information, including his Social Security number.  See id. ¶ 8.  Following this conversation, Ms. Myrthil promptly informed FEMA's Privacy Officer, Eric Leckey, of the unauthorized release of the employee's personal information and immediately began investigating the extent of the disclosure.  See id. ¶ 9.  Her investigation revealed that on October 2, 2014, FEMA inadvertently sent plaintiff the Personally Identifiable Information[3] ("PII") of

---

[2] DD Form 214, Certificate of Release or Discharge from Active Duty, is a Department of Defense form that contains fields for PII.  See Myrthil Decl. ¶ 8 n.2.

[3] The Department of Homeland Security ("DHS") defines PII as "any information that permits the identify of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual, regardless of whether the individual is a U.S. citizen, legal permanent resident, visitor to the U.S., or employee or contractor to the Department."  DHS defines Sensitive PII as PII "which if lost, compromised, or disclosed without authorization, could result in substantial harm, embarrassment, inconvenience, or unfairness to an individual."  DHS Handbook for Safeguarding Sensitive Personally Identifiable Information, March 2012, available at <http://www.dhs.gov/sites/default/files/publications/privacy/Guidance/handbookforsafeguardingsensitivePII_march_2012_webversion.pdf>, at 4.

164 FEMA employees and third parties. See id. ¶ 10. Out of this group, plaintiff received Sensitive PII of three individuals. See id. The PII disclosed to plaintiff included full names, partial Social Security numbers, home addresses, and telephone numbers, while the Sensitive PII included full Social Security numbers, dates of birth, and emergency contact information. See id. FEMA had intended to redact the PII and Sensitive PII pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6), and in fact had previously redacted similar information under this exemption. See id. FEMA released the PII and Sensitive PII boxed by brackets, but, before sending the documents to plaintiff, the agency inadvertently failed to convert the brackets to redaction boxes per its usual redaction process. See id.

Ms. Myrthil's investigation also revealed that the documents plaintiff received contained information that FEMA intended to redact under FOIA Exemption 2, 5 U.S.C. § 552(b)(2) (personnel rules and practices), and Exemption 5, 5 U.S.C. § 552(b)(5) (deliberative process privilege). See id. ¶ 11. This information is similar to information that the agency had previously redacted under Exemptions 2 and 5, and was inadvertently released in brackets like the PII and Sensitive PII described above. See id.

Once he was notified of the inadvertent disclosure of PII and Sensitive PII to plaintiff, Privacy Officer Eric Leckey began notification and remediation processes in accordance with FEMA's procedures for privacy incidents. See id. ¶ 12. On October 16, 2014, Jonathan Chase of FEMA's Office of Chief Counsel, informed plaintiff by e-mail of the inadvertent disclosure and requested plaintiff's consent to a court order for non-disclosure and destruction of all exempt information. See id. ¶ 13; Ex. A (October 16, 2014 E-mail) at 1. On October 19, 2014, plaintiff responded with his refusal to cooperate, stating that "[i]f a good faith effort [was] made by

4

[FEMA] to negotiate a settlement in Kielty v. FEMA . . . [he would] be more likely to deem [counsel's] earlier request to have also been made in good faith." See Myrthil Decl. ¶ 14; Ex. B (October 19, 2014 E-mail) at 1.

On October 20, 2014, Leckey informed plaintiff of the unauthorized disclosure by e-mail, and mailed a hard copy version of the e-mail to plaintiff. See Myrthil Decl. ¶ 15. The e-mail identified the types of PII and Sensitive PII contained in the documents sent to plaintiff, and explained that he had received information which should have been redacted under FOIA Exemptions 2, 5, and 6. See id.; Ex. C (October 20, 2014 Letter) at 1-3. The e-mail further advised plaintiff that he "should IMMEDIATELY: 1) delete the e-mails and any documents attached from your e-mail inbox immediately; 2) delete the e-mail and any documents attached from your e-mail inbox deleted items immediately; 3) not distribute the e-mail, attachments, or information further; and 4) send a confirmation e-mail to [Leckey], certifying that the above has been completed." Id. at 2.

On October 21, 2014, plaintiff responded to Leckey via e-mail. See Myrthil Decl. ¶ 16. Plaintiff stated that he was "forced to investigate and determine [his] ethic[al] duty to the individuals who have already had their Privacy rights violated by this unsolicited release of P[II], if any." Id.; Ex. D (October 21, 2014 E-mail) at 1. Plaintiff further stated that "[his] ethical investigation should be concluded by January 10, 2015, barring any unforeseen delay." Id.

As part of his efforts to address the inadvertent disclosure, on October 27, 2014, Leckey also submitted a request to the Office of Chief Procurement Officer asking to contract for credit monitoring, identity theft prevention, and a call center, to provide services for the 164 affected individuals. See Myrthil Decl. ¶ 17. This request is currently being processed at the highest

5

level of priority.  See id.  On October 31, 2014, Leckey informed the affected individuals via e-mail of the compromise of their PII, advising them that FEMA planned to "protect [them] through a contract with a company specializing in identity theft protection and fraud resolution," and that, "in the near future, [they would] receive formal notification, credit monitoring, identity theft protection services, and access to additional information about the potential breach."  See id.; Ex. E (October 31, 2014 E-mail) at 1-2.

In addition to FEMA's efforts, the United States Attorney's Office also attempted to secure plaintiff's cooperation.  On October 21, 2014, the undersigned Assistant United States Attorney spoke with plaintiff concerning the inadvertent disclosure of PII and Sensitive PII, and asked him to sign an affidavit confirming that he had not copied or distributed the protected information, and that would agree to destroy or return all copies of that information.  See Declaration of Kristin Vassallo ("Vassallo Decl.") ¶ 2.  On October 27, 2014, counsel e-mailed plaintiff a cover letter and affidavit for his signature.  See id.; Ex. 1 (October 27, 2014 Letter and Affidavit) at 1-2.  Following transmission of this letter, counsel communicated with plaintiff, by telephone and by e-mail, regarding whether he would sign the affidavit sent with the October 27, 2014 letter.  See Vassallo Decl. ¶ 3.  He refused to do so, and instead stated that he would be personally contacting each of the individuals whose information was released and providing them with notice of their rights under the Privacy Act.  See id.  Plaintiff e-mailed a copy of this proposed notice to the undersigned counsel on November 3, 2014.  See id.; Ex. 2 (Privacy Act Notice) at 1-2.

## ARGUMENT

**THE COURT SHOULD ISSUE AN ORDER REQUIRING PLAINTIFF TO DESTROY OR RETURN ALL HARD AND ELECTRONIC COPIES OF THE INADVERTENTLY RELEASED INFORMATION AND PROHIBITING HIM FROM DISTRIBUTING OR USING THAT INFORMATION**

Because plaintiff has refused to cooperate with FEMA's efforts in addressing the inadvertent release, FEMA respectfully requests the Court's intervention so as to protect against further unauthorized distribution of the protected information. Although the Government has repeatedly asked and instructed plaintiff to destroy and return all copies of this information, and to agree that he will not distribute or use that information, he has refused to do so, and instead insisted on maintaining the information in his e-mail account. This Court has the authority to issue an order compelling plaintiff to take the steps necessary to protect this information because it was inadvertently produced to plaintiff as part of the agency's response to the FOIA requests that are at issue in this lawsuit. For the reasons that follow, the Court should exercise this authority and enter the proposed order.

"It has long been recognized that federal courts possess certain implied or inherent powers that 'are necessary to the exercise of all others.' Inherent powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" United States v. Moussaoui, 483 F.3d 220, 236 (4th Cir. 2007) (quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34 (1812), and Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962)). In particular, "[f]ederal courts have inherent power over their process to prevent abuse, oppression, and injustice." United States v. Johns-Manville Corp., 213 F. Supp. 65, 72 (E.D. Pa. 1962). Courts may "rely upon

7

their inherent authority" when "'the conduct at issue is not covered'" by other statutes or rules, such as the Federal Rules of Civil Procedure; this arises, for instance, when the conduct at issue took place "prior to the filing of the litigation," "outside the normal discovery process," or outside the explicit scope of "court orders."  Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 568 (S.D.N.Y. 2008) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991), and citing Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 325 (S.D.N.Y.1997)).[4]

"Because of their very potency, inherent powers must be exercised with restraint and caution."  Chambers, 501 U.S. at 44.  In other words, the use of such power must be "a reasonable response to the problems and needs that provoke it."  Degen v. United States, 517 U.S. 820, 823-24, 829 (1996).  Accordingly, courts must use their discretion to exercise their inherent authority reasonably.  See In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions, 278 F.3d 175, 181 (3d Cir. 2002) (reviewing order issued by district court pursuant to district court's inherent authority for abuse of discretion).

Courts have exercised their inherent authority to order parties (and non-parties) to return documents they have obtained, but should not have obtained, outside the discovery process.

---

[4] When a document protected by the attorney-client or work-product privilege is inadvertently produced as part of civil discovery, district courts' authority to order the receiving party to return such documents is now governed by the federal rules of evidence and procedure, see, e.g., Bayliss v. New Jersey State Police, No. 11-890 (MLC), 2014 4657304, at *3 (D.N.J. Sept. 17, 2014) (citing Fed. R. Evid. 502(b) and Fed. R. Civ. P. 26(b)(5)(B)).  Before the adoption of these rules, however, courts had fashioned common-law principles providing for such return.  See Rhoads Industries, Inc. v. Building Materials Corp. of America, 254 F.R.D. 216, 217-20 (E.D. Pa. 2008).  Courts also rely on these common-law principles when ordering the return of inadvertently produced documents protected by other types of privileges and protections.  See, e.g., Flores v. Albertson's, Inc., No. CV 01-0515 PA(SHX), 2004 WL 3639290, at *1-5 (C.D. Cal. Apr. 9, 2004) (payroll documents containing employees' Social Security numbers).

Indeed, there is a small body of cases in which courts have ordered one party to return documents it had obtained from the other party, either prior to the commencement of litigation or otherwise outside the discovery process, as a result of some type of misconduct or unethical behavior. See Eaglesmith v. Ray, No. 2:11-cv-0098-JAM-JFM, 2012 WL 1554922, at *3 (E.D. Cal. May 1, 2012); United States v. Comco Mgmt. Corp., No. SACV 08-0668-JVS (RNBx), 2009 WL 4609595, at *3 n.2 (C.D. Cal. Dec. 1, 2009) (collecting cases); Pure Power, 587 F. Supp. 2d at 566.

But misconduct on the part of the receiving party is not a necessary predicate for the exercise of a court's inherent authority to order a document's return. For instance, in at least two cases that FEMA has been able to locate, a court has ordered a party to return a document inadvertently produced to it through a FOIA release. See American Civil Liberties Union v. Dep't of Defense, No. 09 Civ. 8071 (BSJ)(FM) (S.D.N.Y.), slip opinion at 18;[5] Hersh & Hersh v. U.S. Dep't of Health & Human Servs., No. C 06-4234 PJH, 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008); see also Piper v. U.S. Dep't of Justice, 294 F. Supp. 2d 16, 27 n.5 (D.D.C. 2003) ("the Court expects plaintiff to deliver [a photograph inadvertently produced through FOIA] to [the Government] if [it] so request[s]"), aff'd on other grounds, 222 F. Appx. 1 (D.C. Cir. 2007); Public Citizen Health Research Group v. FDA, 953 F. Supp. 400 (D.D.C. 1996) (placing a protective order on a document containing confidential business information inadvertently released through FOIA pending court determination as to whether document is properly subject to FOIA exemption). In a matter bearing some similarities to these FOIA cases, a court ruled that a party had to surrender to the court (and could not

---

[5] A copy of this order is attached as Exhibit 3 to the Vassallo Declaration.

continue to access thereafter) a classified document that an agency had inadvertently produced to it as part of a pre-litigation administrative process. See Al-Haramain Islamic Found., Inc. v. Bush, 451 F. Supp. 2d 1215, 1228-29 (D. Or. 2006), rev'd in part on other grounds, 507 F.3d 1190 (9th Cir. 2007).  Courts have in fact ordered third parties to return privileged or sensitive documents inadvertently obtained from parties to litigation.  See, e.g., In re Zyprexa Injunction, 474 F. Supp. 2d 385, 424-25 (E.D.N.Y. 2007) (ordering third parties to return sealed documents provided to them in violation of protective order); United States v. Visa U.S.A., Inc., No. 98 Civ. 7076 (BSJ), 2000 WL 1682753, at *1 (S.D.N.Y. Nov. 9, 2000) (ordering third parties to return unredacted trial exhibits that had been inadvertently posted on a Department of Justice website).

And in other cases, courts have precluded a party from using or disseminating documents containing privileged or protected information that was obtained outside the context of discovery.  See United States v. Story County, Iowa, _ F. Supp. 2d _, 2014 WL 2986460, at *12 (S.D. Iowa Jul. 3, 2014) (enjoining county from disclosing federal government records in its possession to any other entity without the consent of the United States); Cabotage v. Ohio Hosp. for Psychiatry, LLC, No. 2:11-cv-50, 2012 WL 3064116, at *3-4 (S.D. Ohio Jul. 27, 2012) (precluding plaintiff from using in her lawsuit any documents containing "sensitive and possibly privileged nature" that were obtained outside the discovery process).

A brief discussion of ACLU and Hersh & Hersh is instructive here.  In ACLU v. DOD, the Department of Defense inadvertently produced to the ACLU a classified document relating to the assessment of certain detainees as part of a rolling production of documents responsive to the

ACLU's FOIA request. See ACLU, slip op. at 3. The ACLU notified DOD when it discovered the document in the production, and the Government asked plaintiffs for the document's return. See id. at 3-4. The parties failed to reach an agreement on the issue, and the Government moved for summary judgment, asking the court to order the ACLU to return the document. See id. at 4. The district court granted the motion. Noting that the ACLU had "initiated this FOIA action so that the Court would compel the Government to respond to their FOIA requests," the court held that the ACLU could "not now claim that the Court lacks the authority to supervise the very process that they themselves set in motion." Id. at 14. The court concluded that, because the document was properly classified, it would require the ACLU to return all copies of the document in its possession. See id. at 14-15.

In Hersh & Hersh v. U.S. Department of Health and Human Services, the agency's Office of Inspector General made productions in response to FOIA requests seeking documents related to the agency's investigation of a medical-technology company. See Hersh & Hersh, 2008 WL 901539, at *1. The agency made two document productions (one before the complaint was filed and one afterwards), releasing well over a thousand pages of documents. See id. Several months later, the agency realized that it had inadvertently included in these productions documents that disclosed the technology company's trade secrets. See id. at *9. The agency notified plaintiffs of this erroneous production, requested the return of the improperly released documents, and provided them with a substitute release set from which the exempt documents had been removed. See id. When the plaintiffs nevertheless refused to return the documents, the court ordered them to do so. See id.

In each of these cases, the court recognized that it had the authority to protect the dissemination of legally protected information that had been disclosed inadvertently to another party in connection with court proceedings, and to order the receiving party to return the documents to their rightful owner.  Likewise, here, the documents in question were inadvertently produced to plaintiff as part of FEMA's response to his FOIA requests – the same requests that are at issue in this lawsuit.  This Court therefore has the authority to grant the relief the Government has requested.

The circumstances of this case strongly support exercise of this authority.  Plaintiff does not, and cannot, dispute that he has received highly sensitive and personal information that he was not and is not authorized to possess.  Indeed, plaintiff admits that FEMA erred in providing him this information, repeatedly stating in correspondence to the agency and counsel that release of the information is a violation of the Privacy Act.  Despite his concededly improper possession of this information, plaintiff has refused all requests and instructions to delete or return the information, apparently due to the mistaken belief on his part that deleting the information could be destroying evidence.  Whatever plaintiff's motivation, erroneous or otherwise, it does not justify his continued unauthorized possession of this indisputedly sensitive information.

Because the information released to plaintiff is so sensitive and personal, FEMA has undertaken intensive efforts to address and mitigate the effects of its inadvertent disclosure: investigating the incident as soon as it was alerted, informing affected individuals that their information had been released, and arranging for credit monitoring and other protections to safeguard against identity theft.  As part of these efforts, FEMA has also repeatedly sought

plaintiff's cooperation in taking steps necessary to prevent further dissemination of the information: namely, a commitment that he would destroy or return all copies of the information and an assurance that he had not copied or forwarded the information to anyone else. Despite his avowed interest in protecting his co-workers' privacy rights, plaintiff has refused FEMA's requests, and the information remains in his personal e-mail account. Given this unyielding recalcitrance, FEMA has no choice but to seek an order from this Court.

Accordingly, to address the inadvertent disclosure of PII and sensitive PII to plaintiff, and, in particular, to guard against any further disclosure, the Court is requested to enter an order (1) requiring plaintiff to delete all electronic copies of the inadvertently produced documents in his possession and to return all hard copies of the documents to FEMA, and (2) enjoining him from maintaining, forwarding, copying, distributing, sharing, or using the information contained in those documents (unless and until the information is disclosed to him under FOIA in accordance with the procedures provided under that Act, or by order of the Court).

In sum, for all of the above reasons, the Court should thus exercise its inherent authority to enter the proposed order.

## **CONCLUSION**

For the foregoing reasons, this Court should grant defendant's motion and issue the proposed order enjoining plaintiff from distributing or using the inadvertently released documents, and requiring him to destroy or return all hard or electronic copies.

Dated:  Newark, New Jersey
              November 5, 2014

>                              Respectfully submitted,
>
>                              PAUL J. FISHMAN
>                              UNITED STATES ATTORNEY
>
>
>                         By: */s/ Kristin L. Vassallo*
>                              Kristin L. Vassallo
>                              Assistant United States Attorney